TOLEDO BAR ASSOCIATION *v.* FARAH.

[Cite as *Toledo Bar Assn. v. Farah*, 125 Ohio St.3d 455, 2010-Ohio-2116.]

*Attorney misconduct, including neglect of client matters and failure to cooperate in the resulting disciplinary investigation — One-year suspension, all stayed on conditions.*

(No. 2009-2330 — Submitted February 24, 2010 — Decided May 20, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-078.

_____

**Per Curiam**.

{¶ 1} Respondent, Asad Farah of Temperance, Michigan, Attorney Registration No. 0066174, was admitted to the practice of law in Ohio in 1996. He is also licensed to practice in Michigan. Based upon findings of client neglect and failure to respond to the resulting disciplinary investigation, the Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice law in Ohio for 12 months, all stayed upon conditions, including one year of monitored probation.

{¶ 2} In a two-count complaint, relator, Toledo Bar Association, charged respondent with five violations of the Code of Professional Responsibility arising from his representation of a client in two personal-injury actions prior to February 1, 2007, and a single violation of Prof.Cond.R. 8.1(b) arising from his failure to respond to the resulting disciplinary investigation.

**Misconduct**

{¶ 3} At the panel hearing, the client testified that respondent had represented her in two personal-injury actions arising from separate automobile accidents. Respondent consolidated the cases, but he never resolved them. The

client claimed that respondent had dismissed her cases without her knowledge or consent in March 2006, but that he had led her to believe that the cases remained pending. She also testified that her cases "dragged out for a long time" and that respondent often did not return her calls during the course of his representation. Despite the alleged deficiencies in respondent's representation, the client was able to obtain new counsel who refiled and ultimately settled her claims.

{¶ 4} Respondent testified that he had informed the client several times, both in person and on the telephone, that he was dismissing her case pursuant to Civ.R. 41(A) because he did not have all the medical records and documentation necessary to proceed to trial. He also claimed that he had sent her copies of everything that he had filed, including the motion to dismiss, and produced copies of two letters that he had sent to her regarding the dismissal. Nonetheless, he conceded that he "could have done more" to pursue her case and keep her informed.

{¶ 5} Respondent admitted that he had failed to cooperate in relator's investigation of the grievance. He acknowledged that he had received letters regarding the investigation but never opened them and that he had promised but failed to provide certain documents to relator. He further stipulated that his conduct violated Prof.Cond.R. 8.1(b), and he volunteered to give up the practice of law in Ohio for one year to atone for his misconduct. He noted that any sanction imposed in Ohio would also affect his license in Michigan, where he conducts the majority of his practice.

{¶ 6} The panel and board found that respondent violated DR 6-101(A)(3) by neglecting his client's legal matters and Prof.Cond.R. 8.1(b) by failing to cooperate in the resulting disciplinary investigation, but dismissed the remaining charges as unsupported by clear and convincing evidence. We adopt these findings.

**Sanction**

**{¶ 7}** When imposing sanctions for attorney misconduct, we consider several factors, including the ethical duties that the lawyer violated and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc. Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

**{¶ 8}** The board noted that respondent's initial lack of cooperation in the disciplinary process was an aggravating factor. BCGD Proc.Reg. 10(B)(1)(e). In mitigation, it found respondent's absence of a prior disciplinary record, the absence of a dishonest or selfish motive, and respondent's eventual cooperative attitude toward the disciplinary proceedings. BCGD Proc.Reg. 10(B)(2)(a), (b), and (d). At the time he handled the grievant's case, respondent faced a number of personal problems, including a lawsuit against a former partner who allegedly forged respondent's signature on half a million dollars of bank notes and the criminal defense of a family friend, the result of which he said rendered him "dysfunctional for a period of time." These issues combined to cause marital and financial problems for respondent that culminated in his filing for bankruptcy. Respondent testified that as a result of these professional and personal challenges, he considered taking his own life. Although he sought counsel from his clergy, he did not seek professional counseling, because he had no health insurance and could not afford treatment.

**{¶ 9}** At the hearing, relator argued in favor of a 12-month suspension from the practice of law, with six months stayed, and respondent volunteered that

he would voluntarily withdraw from the practice of law in Ohio for one year. The board recommends that we impose a 12-month suspension, all stayed on the conditions that respondent (1) submit to a mental-health evaluation conducted by the Ohio Lawyers Assistance Program ("OLAP"), (2) comply with all of OLAP's treatment recommendations, and (3) submit to one year of monitored probation commencing upon the completion of OLAP's mental-health assessment.

{¶ 10} We have previously imposed suspensions ranging from six to 18 months, stayed upon conditions, for similar conduct accompanied by similar mitigating factors. See, e.g., *Cleveland Bar Assn. v. Norton*, 116 Ohio St.3d 226, 2007-Ohio-6038, 877 N.E.2d 964; *Columbus Bar Assn. v. DiAlbert*, 98 Ohio St.3d 386, 2003-Ohio-1091, 785 N.E.2d 747; *Disciplinary Counsel v. Boulger* (2000), 88 Ohio St.3d 325, 725 N.E.2d 1112; and *Disciplinary Counsel v. Boykin* (1994), 70 Ohio St.3d 75, 637 N.E.2d 296. Therefore, we agree that the board's recommended sanction is appropriate.

{¶ 11} Accordingly, we suspend respondent from the practice of law in Ohio for 12 months; however, the suspension is stayed upon the conditions that respondent (1) submit to a mental-health evaluation conducted by OLAP, (2) comply with all of OLAP's treatment recommendations, and (3) submit to one year of monitored probation pursuant to Gov.Bar R. V(9). If respondent fails to comply with the conditions of the stay or probation, the stay will be lifted, and respondent will serve the full 12-month suspension from practice. Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

BROWN, C.J., not participating.

_____

Marshall & Melhorn, L.L.C., and John A. Borell Jr.; Yolanda D. Gwinn; and Jonathan B. Cherry, Bar Counsel, for relator.

Asad Farah, pro se.

_____